UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERTO DOBLES, AN INDIVIDUAL;<br><br>Plaintiff,<br><br>vs.<br><br>BLACK HILLS CORPORATION, BLACK HILLS EXPLORATION AND PRODUCTION, INC., MOC OIL COMPANY SUCURSAL COSTA RICA, BLACK HILLS GAS RESOURCES, INC., DAVID EMERY, AN INDIVIDUAL; LINDEN EVANS, AN INDIVIDUAL; AND RANDY HARRIS, AN INDIVIDUAL;<br><br>Defendants. | 5:22-CV-05078-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS EXCEPT TO CLAIM FIVE AND STAYING CASE |

Plaintiff Roberto Dobles ("Dobles") sued Defendant Black Hills Corporation, Black Hills Exploration And Production, Inc., Mallon Company Sucursal Costa Rica, Black Hills Gas Resources, Inc., David Emery, Linden Evans, and Randy Harris (collectively, "Defendants") over business dealings related to prospective oil and gas exploration in Costa Rica. Doc. 1. Defendants collectively moved to dismiss the complaint, Doc. 26, arguing that Dobles's claims are barred by res judicata, and alternatively, that the complaint fails to state a claim upon which relief may be granted, Doc. 27. For the following reasons, this Court grants Defendants' motion to dismiss except to Claim Five alleging tortious interference with a prospective business relationship and stays the case awaiting the Colorado state appellate court's resolution of a pending appeal to

1

resolve what constitutes improper interference by a parent company with its subsidiary's prospective relationship with a plaintiff.

## I.      Legal Standard on Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Courts must accept the plaintiff's factual allegations as true and make inferences in the plaintiff's favor but need not accept the plaintiff's legal conclusions.  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Therefore, the "factual allegations must be sufficient to raise a right to relief above the speculative level." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020) (cleaned up and citation omitted).

When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, items appearing in the record of the case, and exhibits attached to the complaint.'" Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation omitted); see also Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003) (explaining that courts may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" (citation omitted)).  Here the parties acknowledge that Dobles's complaint against these

2

same defendants filed in Colorado, the two Colorado state court decisions, and the two contracts between Dobles and certain defendants are documents appurtenant to the complaint which this Court can consider in ruling on the motion to dismiss. The consideration of such items does not convert a motion to dismiss into one for summary judgment. Waldner v. N. Am. Truck & Trailer, Inc., 277 F.R.D. 401, 406 (D.S.D. 2011) (citing State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). Claim or issue preclusion may also justify granting a motion to dismiss. See Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011).

## II.   Background

### A. Factual Allegations in the Complaint

In the late 1990's, the government of Costa Rica opened bidding for hydrocarbon exploration and production contracts for 2.3 million acres of potential oil and gas reserves in the northern part of the country ("the Concessions"). Doc. 1 ¶¶ 13–15. In November 1999, Defendant Mallon Oil Company Sucursal Costa Rica ("MOC") submitted a bid to explore the Concessions for oil and gas along with a proposal containing all the field work activities MOC committed to do on the project. Id. ¶¶ 16, 18. Around April 2000, Costa Rica notified MOC that it had won the right to explore and extract the Concessions, which gave MOC the exclusive right under Costa Rica's Adjudications Act and Hydrocarbon Law to explore for oil and gas in the Concessions after performing environmental impact analyses and paying a bond of $275,000 renewed annually. Id. ¶ 24. Under its agreement with the Costa Rican government, MOC had to perform a field environmental impact study ("Field EIS") and submit it to SETENA, the Costa Rican equivalent to the United States Environmental Protection Agency. Id. ¶¶ 26–28. In July 2000, MOC submitted to SETENA geological, topographic, physical, and geophysical information about the Concessions area lacking field work activity, which the Complaint calls the "Desk EIS." Id. ¶ 33.

3

SETENA in October 2000 approved the Desk EIS but made clear that it lacked field work information necessary for the required Field EIS. Id. ¶¶ 35–36.

In March 2003, Defendant Black Hills Corporation ("BHC"), a publicly traded American public utilities company, acquired MOC and its rights to explore the Concessions. Id. ¶¶ 42–44. BHC acquired MOC primarily because MOC had a large oil and gas lease in New Mexico. Id. ¶ 45. The Complaint alleges that BHC originally assigned no value to the Concessions and did not disclose to its shareholders this interest in the Concessions, but at some point "learned … the potential value of the Concessions in Costa Rica was immense." Id. ¶¶ 46–47, 55, 58. MOC— later renamed Defendant Black Hills Gas Resources, Inc. ("BHGR") but continuing to do business as MOC in Costa Rica—and another BHC subsidiary, Defendant Black Hills Exploration and Production, Inc. ("BHE&P"), sought to hire a well-respected and knowledgeable Costa Rican to help them with the Costa Rican regulatory process. Id. ¶¶ 43, 50, 60. Defendants chose Plaintiff Roberto Dobles based on his knowledge and experience with oil and gas exploration in Costa Rica. Id. ¶¶ 61–63.

On January 1, 2010, BHE&P and BHGR/MOC signed a Consultant Agreement with Dobles. Id. ¶¶ 67, 71, 73. The Consultant Agreement was for a one-year term but renewed for an additional six months by mutual agreement. Doc. 28-7 ¶ 2.a. Colorado and Costa Rican law governed the Consultant Agreement. Id. ¶ 16.a. Under the Consultant Agreement, Dobles received $4,000 per month as an independent contractor for services plus reimbursement for expenses and committed to work with Defendants toward the completion and execution of a formal agreement between MOC and Costa Rica covering the Concessions. Doc. 28-2 at 3. Also on January 1, 2010, Dobles, BHE&P, and BHGR/MOC executed a "Royalty Agreement," which among other things entitled Dobles to up to a three percent royalty interest from the sale of oil and natural gas from

4

lands covered by the Concessions "[u]pon final execution of the Concession Agreement by the government of Costa Rica." Doc. 28-6 ¶ 1.

BHGR/MOC and Costa Rica never executed a Concession Agreement. Doc. 28-2 at 3. BHGR/MOC never obtained a Field EIS, and in turn never initiated oil and gas exploration in the Concessions. Doc. 1 ¶ 139. Dobles alleges that there existed a "dichotomy and inherent tension between BHC's conservative utility business (that provides a steady and predictable return) and its oil and gas exploration and production business (that experiences extreme fluctuations in its income), making the Defendants concerned about what might happen to BHC's stock price and bond rating if it pursued oil and gas ventures. Id. ¶¶ 52–54. BHC knew that upon Costa Rican approval of a Field EIS and issuance of a start order, Defendants would have to start field operations within six months, thereby costing several million dollars for initial exploratory activity. Id. ¶ 74. Dobles alleges that BHC embarked on a strategy of delaying filing a Field EIS, by taking the untenable position that the Desk EIS was sufficient and then litigating over that issue for several years. Id. ¶¶ 81–110. In 2014, Defendants finally filed with SETENA an application for a Phase I Field EIS. Id. ¶ 111. In September 2015, the Supreme Court of Costa Rica affirmed that the Concession was valid and unaffected by a moratorium and that a Field EIS was required. Id. ¶ 113–114. A few weeks later, Defendants halted efforts to obtain a Field EIS and "fired or defunded its consultants." Id. ¶ 116. Defendants terminated the Consulting Agreement with Dobles in November 2015. Id. ¶ 117.

Defendants continued to renew the annual bond to retain their interest in the Concessions with the last annual $275,000 bond payment made in July 2019. Id. ¶ 138. In 2019, BHC proposed transferring both MOC and the Concessions to Dobles and George Mallon (the namesake for MOC) if they were able to partner with additional new investors; with Defendants' knowledge,

Dobles and Mallon then met with potential investors about acquiring the Concessions. Id. ¶¶ 140–141. Defendants chose not to renew the bond in January of 2020, which resulted in expiration and termination of the Concessions opportunity and consequently Dobles's hopes for royalties. Id. ¶ 142. Dobles alleges he lost out on a significant royalty interest potentially worth tens of millions of dollars because of Defendants' refusal to pursue a Field EIS and begin exploration of the Concessions. Id. ¶ 148.

### B. Prior Litigation

In September 2021, Dobles filed claims in Colorado state court against these same defendants—BHC, BHE&P, MOC, BHGR, David Emery, Linden Evans, and Randy Harris; those claims were nearly identical to what he filed in this case. Dobles's Colorado state court complaint asserted ten claims for relief against the Defendants: Claim One alleged breach of contract against BHE&P and BHGR/MOC; Claim Two alleged breach of the implied covenant of good faith and fair dealing against BHE&P and BHGR/MOC; Claim Three alleged interference with contractual relations against BHC; Claim Four alleged interference with contractual relations against BHE&P; Claim Five alleged interference with prospective business advantage against BHC; Claim Six was a third party beneficiary cause of action against BHC, BHGR, MOC, and BHE&P; Claim Seven alleged fraudulent misrepresentation, nondisclosure, and concealment against BHC, BHGR, MOC, and BHE&P; Claim Eight alleged BHC, BHGR, MOC, and BHE&P are all alter egos of each other; Claim Nine alleged a conspiracy against the three individual Defendants, David Emery, Linden Evans, and Randy Harris, and other co-conspirators not yet identified; and Claim Ten alleged civil theft against BHC, BHE&P, and BHGR/MOC. Doc. 28-1.

In November 2021, Defendants filed a motion to dismiss the state court lawsuit under Colorado Rule of Civil Procedure 12(b)(5) (the state court analog to a motion to dismiss for failure

6

to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6)).

Doc. 28-2.  Simultaneous with the Rule 12(b)(5) motion, Defendants BHC, Emery, and Evans

filed a separate motion to dismiss under Colorado Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction. Doc. 28-3.  On December 7, 2021, the Defendants and Dobles filed a "Joint

Motion and Stipulation to Stay Briefing on Rule 12(b)(2) Motion." Doc. 35-1.  In that motion,

Defendants and Dobles agreed that "full consideration of the Rule 12(b)(2) motion may require

discovery, and an evidentiary hearing" and that "a ruling in Defendants' favor on a portion or all

of their Rule 12(b)(5) motion may relieve [the state court] of determining the merits of the 12(b)(2)

motion by disposing of these claims." Id. ¶ 3.  The parties requested that the state court stay further

briefing on the Defendants' Rule 12(b)(2) motion pending a decision on the Rule 12(b)(5) motion

for the sake of "judicial efficiency." Id. ¶ 4.

   In March 2022, the Colorado state court issued an opinion and order ("March 2022 order")

granting Defendants' motion to dismiss for failure to state a claim on eight of Dobles's ten claims,

deferring ruling on the claim for alter ego,[1] and denying Defendants' motion to dismiss the claim

against BHC for interference with prospective business advantage. Doc. 28-2.  In sum, the court

concluded that neither the Royalty Agreement nor the Consultant Agreement obligated the

Defendants to execute a finalized Concessions agreement with the Costa Rican government or to

use their best efforts to do so. Id. at 4–5.  The court ruled that Dobles "failed to set forth a plausible

claim for breach of contract." Id. at 5.  The court further determined that Dobles was not an

intended third-party beneficiary to the Concessions award granted by Costa Rica to MOC and that

---

[1] The state court noted that "[a] claim based on alter ego 'is not a separate and independent cause
of action, but rather is merely a procedure to enforce an underlying judgment'" under Colorado
law. Doc. 28-2 at 11.  The court "question[ed] the applicability of the alter ego doctrine" to
Dobles's sole surviving claim for intentional interference with prospective business advantage
against BHC and deferred ruling on the issue. Doc. 28-2 at 12.

his "conclusory allegations that Defendants harbored a present intention not to pursue a Field EIS and Concession Agreement" did not allege fraud with sufficient particularity to survive the motion to dismiss. Id. at 9–10. The court then dismissed the claims for conspiracy and civil theft. Id. at 12–13.

The Colorado court, however, denied Defendants' motion to dismiss Claim Five against BHC for interference with prospective business advantage. Id. at 8–9. In the court's view, Dobles's allegations that "BHC, a nonparty to the Consultant Agreement and Royalty Agreement, interfered with his 'sufficiently definite contractual expectation, specifically the expectation that a royalty would be paid, Field EIS would be pursued, and the pre-approved Concession Agreement executed" sufficiently stated a claim that was plausible on its face. The court rejected Defendants' argument that Dobles's complaint "failed to allege that the duty to pay him a royalty was sufficiently definite under the Agreements" and that Dobles's "allegations of intentional and improper conduct [were] conclusory." Id. at 9. In a footnote, the court remarked that it found no "reported cases in Colorado that require proof [of] 'the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff[.]'" Id. at 9 n.8 (second alteration in the original).

The Colorado litigation ended in June 2022 when the court issued a second opinion and order ("June 2022 order") granting a motion to dismiss for lack of personal jurisdiction Claim Five against BHC for interference with a prospective business advantage, the sole surviving claim (other than the alter ego claim) from the March 2022 order. Doc. 28-3. The Colorado court found it had neither specific nor general personal jurisdiction over BHC, a South Dakota corporation with its principal place of business in Rapid City, South Dakota. Id. at 6. The court alternatively

held that even if it could exercise specific personal jurisdiction over BHC that it "would not comport with traditional notions of fair play and substantial justice" to do so. Id. at 8.

### C.  Federal Lawsuit and Pending Motion

On September 8, 2022, Dobles filed this federal lawsuit against the same Defendants he previously sued in Colorado. Doc. 1. Dobles's federal complaint alleges ten claims for relief against the various Defendants, all of which are virtually identical to his state court claims.[2] Defendants filed a joint motion to dismiss, Doc. 26, asserting that Dobles's federal complaint is barred by res judicata, and alternatively, fails to state any claims upon which relief may be granted.

Dobles's response brief opposing Defendants' motion to dismiss effectively concedes that his federal claims as alleged against every Defendant except BHC are barred by res judicata. Doc. 31. Dobles requests that this Court deny Defendants' motion to dismiss "as it relates to BHC," Doc. 31 at 3, but he does nothing to rebut Defendants' arguments that the claims against BHGR, BHE&P, MOC, David Emery, Linden Evans, and Randy Harris are barred. This is unsurprising given that the Colorado state court thoroughly addressed and dismissed each of Dobles's claims against the non-BHC Defendants in its March 2022 order.

After reassignment of the case to the undersigned, this Court held oral argument on September 6, 2023. The parties at the Court's invitation each filed supplements addressing the question whether, when, and where Colorado law might recognize a tort claim of interference by a parent company in its subsidiary's relationship with a plaintiff. Docs. 39, 40.

---

[2] Because the state and federal claims are substantively identical and alleged in the same order, this Court refers to Dobles's federal claims by the same title as the state claims but will make clear which litigation is being discussed (e.g., "Claim Five" pertains to the interference with prospective business advantage relationship cause of action against BHC).

### III.   Discussion

#### A. Claim Preclusion

Dobles in briefing and during the motion hearing conceded that his claims against every Defendant except for BHC are barred by claim preclusion, so this Court need not consider whether Dobles has stated any claims upon which relief may be granted against Defendants BHGR, BHE&P, MOC, Emery, Evans, and Harris.  All claims against those Defendants in this case are therefore dismissed.  What remains are the claims against Defendant BHC, as well as the alter ego claim, although Dobles presented no argument justifying an alter-ego claim for piercing the corporate veil at the September 6, 2023 argument.

Dobles's claims against BHC fall into three groups: (1) claims the state court dismissed in the March 2022 order for failure to state a claim upon which relief could be granted (Claims Three, Six, Seven, and Ten); (2) the interference with prospective business advantage claim (Claim Five) that the state court found plausible in the March 2022 order but later dismissed in the June 2022 order for lack of personal jurisdiction; and (3) the alter ego claim (Claim Eight) that the state court noted is less of a "claim" than a procedural mechanism for enforcing an underlying judgment were Dobles to succeed on the substantive causes of action.  Whether the first group of claims is barred by res judicata is intensely disputed by the parties.

Federal courts are required to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Healy v. Fox, 572 F. Supp. 3d 730, 739 (D.S.D. 2021), aff'd, 46 F.4th 739 (8th Cir. 2022).  Where, as here, the underlying judgment was rendered in Colorado, this Court must look to Colorado law to define the preclusive effect of the state court judgment.  Colorado courts typically distinguish "claim preclusion" from "issue preclusion."  Gale v. City & Cnty. of Denver, 500 P.3d 351, 352

n.1 (Colo. 2020).  Under Colorado law, "[p]rinciples of collateral estoppel, or issue preclusion, differ from principles of res judicata, or claim preclusion.  Collateral estoppel is broader than the doctrine of res judicata, because it applies to a cause of action different from that litigated in the original controversy. Collateral estoppel is narrower, however, because it does not apply to matters that could have been litigated but were not."  Indus. Comm'n of State v. Moffat Cnty. Sch. Dist. RE No. 1, 732 P.2d 616, 620 (Colo. 1987).  Defendants argue that Dobles's claims against BHC are barred by the doctrine of claim preclusion.  Doc. 27 at 4.

Under Colorado law, "[c]laim preclusion prevents parties from relitigating claims that were or that could have been litigated in a prior proceeding." Gale, 500 P.3d at 354 (citing In Matter of Water Rights, 361 P.3d 392, 398 (Colo. 2015)).  "The doctrine protects 'litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" Argus Real Est., Inc. v. E-470 Public Highway Auth., 109 P.3d 604, 608 (Colo. 2005) (quoting Lobato v. Taylor, 70 P.3d 1152, 1165–66 (Colo. 2003)).  In Colorado, claim preclusion has four elements:

> (1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and (4) the parties to the proceedings were identical or in privity with one another.

Gale, 500 P.3d at 354 (citation omitted).

The parties in this case do not dispute that the second, third, and fourth elements of claim preclusion are satisfied on the claims against BHC.  Rather, the parties disagree about whether the dismissed state court claims against BHC satisfy the first element of finality, which requires "the former judgment to have been entered 'on the merits' and to have concerned a matter within the jurisdiction of the rendering court." Wells v. Premier Indus. Corp., 691 P.2d 765, 767 (Colo. App. 1984) (quoting Pomponio v. Larsen, 251 P. 534 (Colo. 1926)).

11

Claims Three, Six, Seven, and Ten as against BHC would clearly be barred by res judicata or claim preclusion if the state court had personal jurisdiction over BHC when it issued the March 2022 order. After all, a dismissal for failure to state a claim under Rule 12(b)(5) of the Colorado Rules of Civil Procedure usually is a final judgment on the merits. Tidwell ex rel. Tidwell v. City and Cnty. of Denver, 83 P.3d 75, 86–87 (Colo. 2003) (noting that Rule 12(b)(5) motions result in a merits determination early in a case). Defendants argue that under the somewhat unique circumstances of this case, those claims may be barred regardless of the court's absence of personal jurisdiction over BHC. Defendants contend that Dobles is estopped from avoiding claim preclusion because the parties "*jointly* asked the Colorado court to rule in this sequence." Doc. 34 at 4. In their view, "[a]fter intentionally asking the Colorado court to first adjudicate the merits of his claims and then address any personal jurisdiction disputes, Plaintiff should not be permitted to argue that the [Colorado] judgment should now be ignored in order to have a second try to advance the BHC Dismissed Claims in this Court." Id.

Dobles counters that the March 2022 order cannot be a final judgment on the merits of any claim against BHC under Colorado claim preclusion principles. Doc. 31 at 16. Dobles argues that the state court's March 2022 order was not sufficiently concrete to bar him from asserting his claims before a court with proper jurisdiction and that he lacked meaningful opportunity for review of the state court's dismissal order. Dobles asserts that the state court's dismissal of Claims Three, Six, Seven, and Ten as to BHC is void as a matter of law because the state court found in the subsequent June 2022 order that it lacked personal jurisdiction over BHC. Id. at 16–17.

A dismissal for lack of personal jurisdiction typically does not satisfy the first element of claim preclusion because it is not a final judgment on the merits. See C.R.C.P. 41(b) (providing that dismissal for lack of jurisdiction does not necessarily operate as an adjudication upon the

merits); Restatement (Second) of Judgments § 20 (Am. L. Inst., Westlaw Edge Oct. 2023) ("A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim . . . [w]hen the judgment is one of dismissal for lack of jurisdiction . . . ."); <u>Arvada 1st Indus. Bank v. Hutchison</u>, 15 P.3d 292, 293 (Colo. App. 2000) ("A judgment is void if the court that rendered it lacked jurisdiction over . . . the parties . . . ."); <u>In re Marriage of Zubia</u>, 558 P.2d 1003, 1004 (Colo. App. 1976) (noting that if an original decree is void for lack of jurisdiction it can be attacked collaterally). The quandary here is that the parties consented to having the state court decide whether claims involving BHC should be dismissed for failure to state claims under Rule 12(b)(5) before resolving whether the state court had jurisdiction over BHC.

This situation is somewhat analogous to those instances where a trial court dismisses a lawsuit for two separate reasons in a single order, each of which has opposite claim-preclusive effects. <u>See, e.g., Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1</u>, 824 F.3d 1161, 1164 (9th Cir. 2016) (discussing whether an order that contains two holdings, one on the merits and the other not on the merits, has preclusive effect). The Restatement (Second) of Judgments, which Colorado courts have cited favorably in the past, takes the position that such orders should not have claim preclusive effect in a subsequent action. Restatement (Second) of Judgements § 20 cmt. e. ("A dismissal . . . based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim . . . should not operate as a bar."); <u>see also</u> 18A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 4436 (3d ed. updated 2023) ("[A] dismissal that rests both on lack of jurisdiction and alternative rulings on the merits is dominated by the jurisdictional ruling and should not preclude a second action on a claim caught up with the jurisdiction ruling . . . ."). This position makes sense for a few reasons:

> Even if another of the determinations, standing alone, would render the judgment a
> bar, that determination may not have been as carefully or rigorously considered as
> it would have if it had been necessary to the result, and in that sense it has some of
> the characteristics of dicta. And, of critical importance, the losing party, although
> entitled to appeal from both determinations, may be dissuaded from doing so as to
> the determination going to the "merits" because the alternative determinations,
> which in itself does not preclude a second action, is clearly correct.

Restatement (Second) of Judgments § 20 cmt. e.

But the state court's March 2022 order dismissing Claims Three, Six, Seven, and Ten for

failure to state a claim was fairly thorough and appears careful and rigorous in its analysis. Those

findings were not passing observations strewn across more definite jurisdictional conclusions

elsewhere in the order. The parties themselves, in requesting the court to first rule on whether

Dobles had stated claims, contemplated that "a ruling in Defendants' favor on a portion or all of

their Rule 12(b)(5) motion [would] . . . dispos[e] of these claims." Doc. 35-1. Defendant's

arguments that Dobles ought to be barred from asserting the same claims now finds support in

Colorado law recognizing "that 'one who accepts and retains the fruits of a void judgment cannot

afterwards repudiate his action and take advantage of its invalidity.'" In re Marriage of Thompson,

653 P.2d 83, 84 (Colo. App. 1982) (quoting Arthur v. Israel, 25 P. 81 (1890)). And the practical

considerations behind res judicata—"to relieve parties of the cost and vexation of multiple

lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance

on adjudication"—favors preventing Dobles from re-litigating whether his assertions state claims.

Rantz v. Kaufman, 109 P.3d 132, 139 (Colo. 2005).

Ultimately, "[i]n order to be accorded preclusive effect, a judgment must be 'sufficiently

firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and there

was an opportunity for review." Carpenter v. Young By and Through Young, 773 P.2d 561, 568

(Colo. 1989) (citing Restatement (Second) of Judgments § 13 (1983)). At least concerning Claims

14

Three, Six, Seven, and Ten against BHC, the March 2022 order was far from tentative, and the parties certainly had an opportunity to be heard. But Dobles lacked any meaningful opportunity for review of the state court's findings on the merits against BHC. Dobles in a sense found himself in the predicament contemplated by the Restatement: he may view the June 2022 jurisdictional findings to be entirely correct but nonetheless believe the state court got it wrong on the merits in the March 2022 order. He could not very well appeal the March 2022 order knowing full well that Colorado courts lack personal jurisdiction over BHC.

The Colorado state court decision of March 2022 has claim preclusion effect, therefore, on Claims One, Two, Three, Four, Six, Seven, Nine, and Ten as to all Defendants except BHC. Because Dobles lacked a viable opportunity to seek review of the March 2022 order as to BHC due to an absence of Colorado jurisdiction over BHC, the March 2022 order does not preclude Claims Three, Six, Seven, and Ten. The March 2022 order did not dismiss Claims Five or Eight either, though Claim Eight to pierce the corporate veil and treat BHC, BHGR, MOC, and BHE&P as a single entity makes little sense in a case where the parent company BHC alone remains as a defendant.

### B.  Failure to State a Claim against BHC

Because the Colorado state court's dismissal of claims does not preclude Dobles's claims as to BHC, this Court must next consider whether Dobles has stated claims against BHC in this case. The Colorado state court dismissal, however, does have claim preclusion effect on all claims Dobles made against defendants besides BHC. Dismissal of some of the contract claims Dobles had against certain defendants affects what claims can be plead against BHC.

The Colorado state court dismissed Dobles's first claim for relief for breach of contract and second claim for breach of implied covenant of good faith and fair dealing against BHE&P

15

and BHGR/MOC, the parties to the Consultant Agreement and Royalty Agreement. Claim preclusion principles apply to that decision barring claims Dobles has against those signatories to the Consultant Agreement and Royalty Agreement. The Colorado court reasoned that:

> neither the Consultant Agreement nor the Royalty Agreement imposed a duty upon BHE&P and BHGR/MOC to pursue the Concession Agreement or even use their best efforts to pursue such agreement. Similarly, the Agreements did not impose requirements to pursue a Field EIS, to indefinitely employ Plaintiff, or to maintain a bond. Moreover, neither contract imposed any duties on Defendants to pursue oil and gas operations. Indeed, Defendants' determination to divest from all oil and gas operations was independent of any specific contract term under the Agreements.

Doc. 28-2 at 6. Nothing under Colorado law—or within the agreements themselves for that matter—placed Defendants under an affirmative obligation to begin exploration of the Concessions so that Dobles could profit from his prospective royalty interest. See Soderlun v. Pub. Serv. Co. of Colorado, 944 P.2d 616, 623 (Colo. App. 1997) ("The covenant of good faith and fair dealing, whether express or implied, does not inject new substantive terms into a contract or change its existing terms.").

In Claim Three, Dobles alleges tortious interference with contract against BHC for interfering with Dobles's contract rights under the Consultant Agreement and Royalty Agreement by causing BHC's subsidiaries BHE&P and BHGR not to pursue the Field EIS and causing termination of the Concessions and Dobles's contracts. Doc. 1 ¶¶ 166–174. Dobles's third claim assumes that he has contractual rights under the Consultant Agreement and Royalty Agreement with BHE&P and BHGR that the Colorado court found he lacks. As the state court put it, "Plaintiff fails to establish satisfaction to two conditions precedent to the entitlement of a royalty interest," so there was no underlying breach of contract claim for non-payment of royalties. Doc. 28-2 at 5. As a matter of law, BHC cannot be held responsible for interfering with contract rights that Dobles does not have. That is, Dobles cannot claim BHC intentionally interfered in his contracts with

16

other Defendants when the underlying contracts did not entitle, let alone guarantee, Dobles to the royalty payment he now seeks. Cf. Slater Numismatics, LLC v. Driving Force, LLC, 310 P.3d 185, 193 (Colo. App. 2012) (noting that the tort of intentional interference with contractual relations concerns where a defendant causes a third party to fail on an obligation it *owes* to the plaintiff).

Dobles named BHC alongside Defendants BHGR, MOC, and BHE&P in Claim Six for "third party beneficiary of contract," in which Dobles contends that by entering into the Royalty Agreement and Consultant Agreement, he thereby became a third-party beneficiary to the prospective Concessions Agreement. Doc. 1 ¶¶ 194–201. In a ruling with preclusive effects on Dobles's claims against the signatories to the agreements, the Colorado court dismissed this third-party beneficiary claim. This Court agrees with the Colorado court's reasoning that Dobles did not through the 2010 agreements with BHGR and BHE&P become a third-party beneficiary to the 2000 agreement between Costa Rica and MOC to allow exploration and potential extraction in the Concessions area. See Doc. 28-2 at 8–9. Dobles has not plausibly alleged he was an intended third-party beneficiary of the Concession award. Cody Park Prop. Owners' Ass'n v. Harder, 251 P.3d 1, 5 (Colo. App. 2009) (holding that to prevail on a third-party beneficiary claim plaintiff must show he was a direct, and not merely incidental, intended beneficiary of the underlying agreement).

Dobles's seventh claim alleged fraudulent misrepresentation, nondisclosure, and concealment against BHC, BHGR, MOC and BHE&P. The gist of Dobles's seventh claim is that these Defendants failed to disclose and concealed their intent to never obtain a Field EIS. Doc. 1 ¶¶ 203–211. The Colorado court relied on Colorado law to conclude that Dobles had not met requirements to plead fraud with particularity and had failed to "specify the statements that

the plaintiff claims were false or misleading, provide particulars regarding the respect in which the statements were fraudulent, allege when and where the statements were made, and identify who made such statements." Doc. 28-2 at 11, (quoting Schaden v. DIA Brewing Co., 478 P. 3d 1264, 1275 (Colo. 2021)). Oddly, rather than attempting to cure these shortcomings in pleading fraud, Dobles simply filed what appears to be the same complaint in this Court. The federal requirements for pleading fraud with particularity parallel those that the Colorado court referenced. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); Olin v. Dakota Access, LLC, 910 F.3d 1072, 1075 (8th Cir. 2018) (describing that Rule 9(b) requires a complainant to "plead such facts as the time, place, and content of the defendant's [fraud], as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result"); see Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009) (explaining how Rule (9)(b) requires a heightened pleading standard when pleading "fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be plead under Rule 8's "short and plain statement of the claim" standard). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2013).

Here Dobles does not allege with sufficient particularity that BHC fraudulently misrepresented, concealed, or failed to disclose its intent whether to pursue a Field EIS through its subsidiaries. Dobles's complaint does not identify which of the, or if all, four defendants made the alleged representation, it fails to identify the employee(s) that allegedly communicated with Dobles, and it fails to allege any time, place, or method through which the representation was made. "Rule 9(b)'s heightened pleading standard requires greater specificity[.]" Id. (holding that

a complaint alleging fraudulent misrepresentation fails because it did not identify the employee who made the representation or the times and places the alleged representation was made).

BHC is not named in Claim Nine but is named in Claim Ten for "conversion/civil theft" alongside BHE&P and BHGR/MOC.   Claim Ten centers on the Royalty Agreement that Dobles entered with BHE&P and BHGR/MOC, contending that the Royalty Agreement had a market value and that Defendants interfered with the Royalty Agreement by concealing an intent not to pursue a Field EIS and thereafter abandoned the Concessions. Doc. 1 ¶¶ 245–255. The Colorado court dismissed Claim Ten and did so for good reason.   Under Colorado law, a civil theft claim requires a plaintiff to establish that a defendant obtained control over plaintiff's property without authorization and that the defendant did so with the specific intent to deprive plaintiff of the benefit of the property. Huffman v. Westmoreland Coal Co., 205 P.3d 501, 509 (Colo. App. 2009).  A mere expectancy in a royalty interest, as the Colorado court noted, "is not a presently enforceable property right." Doc. 28-2 at 11, (citing Huffman, 205 P.3d at 510).  Here the claim preclusive holding that Dobles did not have a contractual right to a royalty payment because certain contingencies did not occur means that Dobles likewise lacked a property interest in royalties such that he would have any claim for conversion or civil theft. See Doc. 28-2 at 3–5, 11–12.

That leaves the two claims on which the Colorado court declined to dismiss—Claim Five for interference with prospective business advantage and Claim Eight for "alter ego."  Claim Eight alleges that "Defendants are all alter egos of each other and there is an agency relationship between the subsidiaries and the parent" and that "BHC's control over its subsidiaries is so extensive that the latter are merely an instrumentality of the former." Doc. 1 ¶¶ 226–227. Dobles wishes for the separate corporate forms to be disregarded and for all the named corporate entities to be held jointly and severally liable to him. Id. ¶ 228. The Colorado court properly noted that Claim Eight "is not

19

a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment." Doc. 28-2 at 11 (quoting Swinerton Builders v. Nassi, 272 P.3d 1174, 1177 (Colo. App. 2012)). This sort of piercing-the-corporate-veil claim is particularly odd in this case where the corporate parent BHC would be the only name defendant because claim preclusion bars all other claims as to BHE&P/MOC and BHGR. At oral argument, Dobles's counsel asserted that the claim should remain as a vehicle to facilitate discovery from BHC's subsidiaries. In short, Dobles's counsel presented no argument short of perceived strategic benefit to justify an "alter ego" or piercing-the-corporate-veil claim in a case where BHC, the parent company, would be the sole defendant. Moreover, Claim Eight does not allege enough facts to state a claim for piercing the corporate veil of BHC or its subsidiaries. See Doc. 1 ¶¶ 223, 212 (alleging that BHC used its subsidiaries to promote fraud or injustice); Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020) (explaining how Rule 9(b) requires complaints alleging fraud must be plead with heightened particularity); see also Song v. Champion Petfoods USA, Inc., No. 18-cv-3205, 2020 WL 7624861, at *5 (D. Minn. Dec. 22, 2020) ("Claims sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).") (citing Tooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010)). Claim Eight is a form of remedy rather than a separate claim for relief anyway. See Tamko Roofing Prods. v. Smith Eng'g Co., 450 F.3d 822, 826 n.2 (8th Cir. 2006) ("[P]iercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action.").

What remains then is Claim Five, the interference with a prospective business advantage claim against BHC, on which the Colorado court declined to grant dismissal. The Colorado court's analysis of Claim Five was a bit cursory, Doc. 28-2 at 7–8, prompting a more thorough analysis here. The parties cite to and accept that Colorado law (specified to govern the Consultant

Agreement) governs all the claims, including the tort claims, and choice of law principles point to applying Colorado substantive law. Colorado law recognizes a cause of action for tortious interference with prospective business advantage. MDM Group Assocs. v. CX Reinsurance Co. Ltd., 165 P.3d 882, 886 (Colo. App. 2007); Dolton v. Capitol Fed. Sav. & Loan Assoc., 642 P.2d 21, 23 (Colo. App. 1981). The Supreme Court of Colorado has drawn from the Restatement (Second) of Torts § 766 to recognize tortious interference with prospective business relationship:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

Amoco Oil Co. v. Ervin, 908 P.2d 493, 500 (Colo. 1995) (quoting Restatement (Second) of Torts § 766B (1979)).

For tortious interference with prospective business relationship to be claimed, there must be a prospective contractual relation. Dobles claims both a contractual and business relationship with BHE&P and BHGR. Doc. 1 ¶ 186. Dobles's relationship with those BHC subsidiaries indeed was contractual under the Consulting Agreement and the Royalty Agreement, neither of which were breached as a matter of law; for the reasons explained earlier, Dobles has no claim for tortious interference with those contracts. Dobles continues in Claim Five to allege entitlement to royalties upon extraction of hydrocarbons from the Concession area based on the business relationship alleged in Claim Five between Dobles and the BHC subsidiaries. Id. ¶¶ 186–192. "Interference with 'another's prospective contractual relation' is tortious only if there is a reasonable likelihood or reasonable probability that a contract would have resulted." MDM Grp. Assocs., Inc. v. CX Reinsurance Co., 165 P.3d 882, 886 (Colo. App. 2007) (citation omitted). Although not expressly alleged within Count Five, Dobles does incorporate all his prior allegations in the claim and has

21

as one theory of his pleading that absent for BHC's decision to direct its subsidiaries not to pursue a Field EIS and not to renew the bond, his prospective interest in large royalty payments would have come to fruition. See Doc. 1 ¶¶ 155, 161, 162, 167, 169, 170, 178, 179, 180, 185, 186. Dobles's allegations present an assertion to royalties that were plainly contingent, see Doc. 28-2 at 5, but any "prospective contractual relation" is "prospective" or contingent.

A claim for tortious interference with a prospective business relation also requires an intentional and improper act of interference. Restatement (Second) of Torts § 766 (Am. L. Inst. Westlaw Edge May 2023). "[T]here must be a showing of improper and intentional interference by the defendant that prevented the formation of a contract between the plaintiff and a third party." Omedelena v. Denver Options, Inc., 60 P.3d 717, 721 (Colo. App. 2002) (citing Wasalco, Inc. v. El Paso Cnty., 689 P.2d 730 (Colo. App. 1984)). Drawing from Restatement (Second) of Torts § 767, the Colorado Supreme Court has adopted the following factors to determine whether a defendant's interfering conduct was improper:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

Amoco Oil, 908 P.2d at 500–01 (quoting Restatement (Second) of Torts § 767 (1979)).

Within Claim Five, Dobles alleges that "BHC's conduct and interference was done in furtherance of its illegitimate effort to protect its stock price by sacrificing significant assets owned by its subsidiaries, which assets Plaintiff was entitled to a 3% royalty on." Doc. 1 ¶ 190. From an earlier paragraph in Claim Five, the "conduct and interference" about which Dobles complains is delaying and not getting a Field EIS, though elsewhere he alleges improper abandonment of the Concessions more generally. Id. ¶ 186. Considering the Restatement factors, including "the nature

of the actor's conduct, the actor's motive, and the interests of the other with which the actor's conduct interferes," this Court notes that the Defendants had no contractual obligation to Dobles to obtain a Field EIS and little criticism can be made for a publicly traded company choosing to abandon a business opportunity to protect its stock price. Dobles no doubt disagrees with—and considers wholly improper—the business decision of Defendants to not pursue a Field EIS and to stop paying the annual bond thereby sacrificing the opportunity to explore the Concessions, but that alone does not make BHC's actions "improper" under the Restatement (Second) of Torts § 767. Dobles's allegations do not present a compelling case for finding an improper and intentional interference under the Restatement (Second) of Torts § 767 factors, but this Court is ruling on a motion to dismiss here, where well-pleaded factual allegations are taken as true and inferences taken in the plaintiff's favor. Retro Television Network, 696 F.3d at 768–69.

Logically, the legal protection for actual contractual rights should be greater than for the less-concrete prospective contractual relation; the intentional and improper conduct required for tortious interference seemingly should be more egregious when merely a prospective relation is alleged than when an actual contract right exists. In some cases involving tortious interference with a prospective business relationship, particularly those involving competitors, Colorado courts have imposed an additional requirement that the interfering conduct be "wrongful," or by "wrongful means." Amoco Oil, 908 P.2d at 501 (citing Restatement (Second) of Torts § 768). Such "wrongful means" include physical violence, fraud, civil suits, and criminal prosecutions. Id. at 502. BHC is not a competitor of Dobles and nothing in the complaint alleges any conduct of BHC approaching such "wrongful means."

BHC in a post-hearing supplement filed with this Court, Doc. 40, advised that the Colorado Court of Appeals has the issue before it in Black Hills Corp. v. GT Resources, LLC whether a

similar "wrongful means" standard under Restatement (Second) of Torts § 769 should apply when a plaintiff alleges that a parent company tortiously interfered with a prospective business relation involving its subsidiary. Dobles at this Court's request provided cases post-hearing that a parent may be held responsible for tortious interference in a relationship between a subsidiary and a third party. Doc. 39; Affordify, Inc. v. Medac, Inc., No. 19-cv-02082, 2020 WL 6290375, at *6 (D. Colo. October 27, 2020); Rodriquez v. Bar-S Food Co., 539 F. Supp. 710, 718 (D. Colo. 1982). Those cases, however, do not clarify what standard—merely "improper" or also "wrongful means"—the interference must meet.

Rather than rule on dismissal of Claim Five now, this Court chooses to stay this case awaiting clarification on Colorado law on tortious interference with prospective contract relation from the pending appeal in Black Hills Corp., v. GT Resources, LLC. This Court dismisses all remaining claims against BHC—Claims Three, Six, Seven, Eight, and Ten—because the allegations against BHC in the federal complaint fail to state any claims upon which relief may be granted under Rule 12(b)(6), regardless of whether those claims are barred by claim preclusion. Defendants' Motion to Dismiss, Doc. 26, is accordingly granted except as to Claim Five.

## IV.    Leave to file an amended complaint and conduct discovery

Dobles's response brief requests in the alternative that he be allowed to amend his complaint "in the event this Court determines further factual allegations are necessary to support Dobles' claims for relief." Doc. 31 at 28. Dobles also asks for limited discovery because, in his view, "[m]any documents related to [his] claims against BHC are . . . uniquely in BHC's possession, custody, or control." Id. at 29. Defendants resist Dobles's request to amend his complaint, noting that courts and the parties have "devoted significant time and resources to

24

motion practice" already and that Dobles does not identify how he might amend to correct his original complaint. Doc. 34 at 22.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading . . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Under Rule 15(a), "[t]he court should freely give leave [to amend the complaint] when justice so requires," Fed. R. Civ. P. 15(a), and "[a] decision whether to allow a party to amend [a] complaint is left to the sound discretion of the district court," Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). See also Plymouth Cnty. v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2014) (motions for leave to amend "should be freely given in order to promote justice"). Denial of a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). An amendment is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6)." Id. (citation omitted).

Under Local Rule, Dobles should have filed a separate motion to amend attaching his proposed amended complaint, D.S.D. CIV LR 15.1, rather than making the request in briefing and failing to attach a proposed amended complaint. See Fed. R. Civ. P. 7(b) (stating that requests for court action must be made by filing a motion). Dobles's informal request for leave to amend did not conform with D.S.D. CIV LR 15.1 and thus is denied. This Court also denies Dobles's informal request to allow him to conduct discovery to determine whether he might be able to state a claim against BHC. Dobles did not file any affidavit explaining what discovery he needed to conduct, so his request would not even meet the standard of Rule 56(d) of the Federal Rules of Civil Procedure—requiring an affidavit or declaration showing "specific reasons" why the

25

nonmovant "cannot present facts essential to justify its opposition"—to forestall a summary judgment motion.

### V.    Conclusion

For the above reasons, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 26, is granted as to all claims other than Claim Five and to all parties other than Black Hills Corporation.  It is further

ORDERED that the lone remaining claim—Claim Five against Black Hills Corporation—is stayed pending the outcome of the appeal of <u>Black Hills Corp. v. GT Resources, LLC</u>.  Once that appeal is concluded, Black Hills Corporation may file a renewed motion to dismiss, if it so chooses, or file an answer to Claim Five of the Complaint.  It is further

ORDERED that Plaintiff's request to amend his complaint and conduct discovery is denied.

DATED this 29ᵏ day of September 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE