**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| **ROBERTO DOBLES,**<br>**Plaintiff,**<br>**vs.**<br>**BLACK HILLS CORPORATION,**<br>**Defendant.** | **5:22-CV-05078**<br>**ORDER AWARDING ATTORNEY FEES** |

Roberto Dobles ("Dobles") moved to compel the production of documents, maintaining that Black Hills Corporation ("BHC") improperly withheld them on work product and attorney-client-privilege grounds.[1] After denying his motion, the Court gave BHC a deadline to seek expenses and attorney fees as the prevailing party.[2] BHC made a fee request[3] and Dobles responded to it.[4] For the reasons explained below, the Court grants BHC reasonable fees of $18,323.

## BACKGROUND

This case has years of history,[5] but very little of it is relevant to the monetary issue at hand. On January 30, 2026, Dobles made a request for significant document discovery, contending that BHC's November 2025 privilege log was insufficient to justify

[1] Dkt. Nos. 84, 91.
[2] Dkt. No. 102, at 18.
[3] Dkt. Nos. 105, 109
[4] Dkt. No. 108.
[5] *See* Dkt. No. 102, at 2-5.

nondisclosure.[6] BHC made no response in the ensuing months, and Dobles did not raise the issue again until March 16, 2026.[7] With the discovery deadline fast approaching, Dobles filed his first motion to compel.[8]

In response, BHC turned over 593 documents—228 unredacted and 365 with modified redactions.[9] Because it viewed the initial motion as moot, BHC asked Dobles to file an amended motion to address any outstanding or new requests.[10] When Dobles did so, the Court ordered *in camera* review of the 108 contested documents.[11] After a thorough review, the Court denied Dobles's amended motion, concluding that the documents of which he sought disclosure were work product and privileged.[12] The Court also denied his original motion, which appeared to still be outstanding, considering it moot.[13] BHC, as the prevailing party, then sought to recover more than $58,000 in fees expended.[14] The Court has reviewed BHC's fee affidavit,[15] as well as both the response and reply to the same,[16] and grants BHC fees, but in an amount far less than it asks for.

---

[6] Dkt. Nos. 84, at 2, 13-16; 84-1; 84-2.
[7] Dkt. No. 84, at 59.
[8] Dkt. No. 84.
[9] Dkt. No. 102, at 8.
[10] Dkt. No. 94, at 1-2, 8-9.
[11] Dkt. No. 101.
[12] Dkt. No. 102, at 6-17.
[13] Dkt. No. 102, at 2.
[14] Dkt. No. 105.
[15] Dkt. No. 105.
[16] Dkt. Nos. 108; 109.

## DISCUSSION

**A. Sanctions Are Justified.**

Dobles challenges BHC's fee request, insisting that his motions were substantially justified and that ordering him to pay fees would be unjust. Neither argument is persuasive and some fees are compensable.

**1. *In Camera* Review**

Dobles first argues that the Court's grant of *in camera* review made the amended motion "both reasonable and substantially justified[.]"[17] This argument, based on a single citation to a California district court, fails.

Federal Rule of Civil Procedure 37 provides that an award of fees cannot issue where "the opposing party's nondisclosure, response, or objection was substantially justified[.]"[18] But a court's grant of *in camera* review to evaluate a motion's merits does not mean the request was substantially justified. Where a party's motion for *in camera* review was pending when the district court ordered sanctions with insufficient justification, the Eighth Circuit remanded, instructing the district court "to consider a range of potential sanctions and to examine each party's actions."[19] There, remand included "examination of the materials provided to the court for *in camera* review" and any "findings regarding" discovery abuse or misconduct, which "would likely factor

[17] Dkt. No. 108, at 7 (citing *Cunningham v. Connecticut Mut. Life Ins.*, 845 F. Supp. 1403, 1416 (S.D. Cal. 1994)).
[18] Fed. R. Civ. P. 37(a)(5)(A)(ii).
[19] *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 905 (8th Cir. 2009).

heavily into the sanctions analysis."[20] Thus, a grant of *in camera* review does not preclude a court from considering sanctions afterward and the information gained from such a review may inform the court's determination.[21]

The Court made clear when denying the amended motion that it did not order *in camera* review "because it believed BHC's privilege log was deficient" but because it wanted to exercise its prerogative "to judge the validity of the proffered reasons[.]"[22] The Court believed it most prudent not to "blindly judge whether documents are work-product or privileged without examining them," and both parties asked for that precise mechanism.[23]

Dobles alternatively argues that the amended motion was reasonable because BHC conceded a lack of privilege over the other documents that were disclosed.[24] Even so, the Court does not find an allegation of prior discovery abuse—over which it made no findings—persuasive proof that continuing the fight through the amended motion was reasonable.

*In camera* review was not mandated because the privilege log was insufficient or because the Court believed continued discovery disputes had merit. The parties asked

[20] *Id.* (emphasis added).
[21] *See id.*; *see also Buergofol GmbH v. Omega Liner Co.*, 22-CV-04112, 2026 WL 2185492, at *59-63 (D.S.D. July 29, 2026) (court "received trade secrets…and reviewed them *in camera*," found discovery violations, and issued Rule 37 sanctions).
[22] Dkt. No. 102, at 16.
[23] Dkt. No. 101, at 2.
[24] Dkt. No. 108, at 7-8.

the Court to resolve the dispute; to be fair, the Court wanted to review the documents. It did not intend to rule out the possibility of sanctions when doing so. Dobles's argument that *in camera* review foreclosed sanctions is legally unsupported. And his argument that he had a reasonable basis to continue the fight after receiving nearly 600 documents—because of prior alleged abuse—is likewise an insufficient basis for avoiding sanctions.

**2. Fees are just.**

Dobles secondarily argues that "any fee award to [BHC] would be unjust" under the circumstances.[25] The argument though lacks supporting case law and rests upon overbroad, shaky public policy contentions.[26]

As Dobles sees it, his "request for *in camera* review of the remaining 108 documents in dispute was reasonable" in light of the discovery that was produced after his initial motion.[27] He maintains that awarding fees "would have a chilling effect on zealous legal advocacy for fear of an award of expenses upon an unsuccessful motion," whereas declining sanctions "would be consistent with the principles of equity given that he acted in good faith[.]"[28]

Contrary to Dobles's assertion that he tried to conserve "the Court's finite resources,"[29] he expended significant resources and time raising unmeritorious claims

---

[25] Dkt. No. 108, at 8 (cleaned up).
[26] *See* Dkt. No. 108, at 8.
[27] Dkt. No. 108, at 8.
[28] Dkt. No. 108, at 8.
[29] Dkt. No. 108, at 8.

contesting a privilege log that complied with all requirements—protected by work product and privilege—because he was unsatisfied with the 593 documents, which he already received. BHC complied with the vast majority of the document requests within Dobles's first motion.[30] By the filing of the amended motion, 10 more requested documents had been turned over, leaving only 108 out of 118 at issue for *in camera* review.[31] This is not a case of an unsophisticated party unfamiliar with discovery; both parties are represented by competent counsel well-versed on their obligations to act expeditiously and in good faith.[32] Justice requires litigants to exercise care in their discovery practices and be solicitous about involving the Court. Where, as here, the ordinary discovery process failed to instill this solicitude, sanctions are just.

Dobles declares that he "reserves the right to pursue" sanctions against BHC "because his initial motion to compel resulted in the disclosure (in whole or in part) of 593 previously withheld documents[.]"[33] No such motion is before the Court, and it will not rule on the veracity of these statements or the reprehensibility of BHC's conduct beyond what is necessary to address the sanctions request. It is the reasonableness of Dobles's conduct that the Court must evaluate, not the possibility of sanctions against BHC for its supposed belated disclosure of documents already provided.

---

[30] *See* Dkt. No. 94, at 8 (BHC supplied 593 documents in response to the initial motion, all but 9).
[31] *See* Dkt. No. 94, at 8.
[32] *Contrast with Tovar v. Kolberg-Pioneer, Inc*, 23-CV-04059, 2025 WL 1237297, at *4 (D.S.D. Apr. 29, 2025) (denying sanctions given party's "pro se status, his likely lack of litigation experience").
[33] Dkt. No. 108, at 6 & n.1.

Dobles has failed to show that his conduct was substantially justified or that sanctions against him would be unjust given the circumstances. Consequently, reasonable fees in opposing his follow-up compel motion are warranted.

**B. BHC's request is unreasonable, in part.**

But $58,066.70 in fees[34] is unreasonable in light of the compensable work BHC's counsel performed. The burden "is on the moving party to prove that the request for attorney's fees is reasonable."[35] BHC has partially failed to carry its burden. Cuts to its requested fees come in two categories: first, unrecoverable work addressing Dobles's first motion and, second, reductions to counsels' hourly rates based on market value.

**1. Work on First Motion**

BHC says it is entitled to fees for the first motion because of "the Court's total rejection of [Dobles's] positions applies equally to both [m]otions."[36] That is wrong. When ordering *in camera* review, the Court limited the scope of its examination to "contested documents (those not already produced)[.]"[37] In the order denying Dobles's motion to compel, therefore, the only factual findings and merits determinations the Court made concerned the 108 undisclosed documents in Dobles's amended motion. The Court denied his initial motion because it had been amended (and thus superseded), it had been

---

[34] Dkt. No. 109, at 10.
[35] *Haukaas v. Liberty Mut. Ins. Co.*, No. 20-CV-04051, 2022 WL 1719412, at *8 (D.S.D. May 27, 2022) (quoting *Atmosphere Hosp. Mgt., LLC v. Curtullo*, No. 13-CV-05040, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015)).
[36] Dkt. No. 109, at 3.
[37] Dkt. No. 101, at 2.

rendered moot by BHC's intervening disclosures, and it had appeared as a pending motion at the time in the clerk's docket sheet.[38] Indeed, BHC articulated the same position in response to the amended motion, telling the Court that it "requested that [Dobles] file an amended motion as nearly all the 'disputes' identified in the first motion to compel were moot."[39] The Court did not address the merits of Dobles's first motion. Nor did its decision concerning the 108 withheld documents retroactively sanctify BHC's refusal to turn over the 593 documents he initially requested, many of which eventually reached him unredacted.[40]

Both parties have engaged in gamesmanship in an attempt to one-up the other. Pertinent here, BHC misleadingly claims that it "agreed to produce certain documents in a good faith effort to resolve the dispute[.]"[41] Dobles made a formal request for production in January 2026.[42] Regardless of his lack of follow up, and "despite having numerous interactions with BHC's counsel" before filing the initial motion,[43] BHC's independent obligation to comply with lawful discovery requests did not hinge on Dobles's thorough prosecution of the requests. BHC cannot ignore them until they are acted on in the hopes that the problem will go away.

---

[38] Dkt. No. 95-13; 95-14; 102, at 4-5, 18.
[39] Dkt. No. 94, at 8.
[40] *See* Dkt. No. 102, at 8 (noting 228 requested documents were eventually turned over unredacted, despite BHC's initial claim of privilege).
[41] Dkt. No. 109, at 3.
[42] *See* Dkt. No. 84-1 (Dobles's email requesting production).
[43] Dkt. No. 109, at 8.

BHC's eventual acquiescence to Dobles's initial discovery requests made any merits determination of them moot insofar as they differed from the requests in the amended motion. It is unreasonable to award sanctions to BHC for work on a motion that was not the subject of the Court's *in camera* review and which did not form the factual predicate or basis for its order. To the extent that there were documents at issue in both motions—only 9 documents by BHC's count[44]—BHC bore the burden of presenting the hours dedicated to protecting these documents from among the countless hours billed for the other 593. It has not done so, doubtless because such a feat would be impossible. As such, all hours for the initial motion are excised in their entirety. BHC says that fees should be awarded since at least May 15, 2026,[45] but May 12, 2026 appears to be the first instance of work billed for the amended motion.[46] That said, any work performed before May 12, 2026, is unreasonable and will be disregarded in the fee calculation.

**2. Reasonable Hourly Rate**

In the event that the initial-motion billings are disregarded, BHC urges the Court to award $24,917.40 in attorney fees.[47] It is unclear to the Court how BHC came up with this amount. At any rate, the Court believes a reduction in the hourly rate of BHC's counsel is appropriate, so it does not matter what BHC's figure is.

---

[44] Dkt. No. 94, at 8.
[45] Dkt. No. 109, at 8-9.
[46] Dkt. No. 105, at 27 (billing for correspondence "with local counsel regarding [Dobles's] plan to file amended motion to compel")
[47] Dkt. No. 109, at 9, 10.

In the typical case, the "reasonable hourly rate is [] the ordinary rate for similar work in the community where the case is being litigated[.]"[48] This "does not mean [, however,] that out-of-town counsel must always be limited to local rates[.]"[49]

BHC has submitted expense reports reflecting the hourly billing of attorney Jennifer Allen (a partner) at $715, attorney Brooke Alcott (an associate) at $526, and attorney Delia Druley (a partner) at $295. Neither party contests Druley's hourly rate and, therefore, her rate will not be probed. Nor does Dobles challenge BHC's decision to retain Denver-based counsel in this diversity case rooted in Colorado substantive law.[50] Still, Allen and Alcott's rates are too high and need to be trimmed.

None of the cases BHC relies on support hourly rates for attorneys with Allen and Alcott's experience in the Denver market at the levels they request.[51] In one case—that BHC attaches to its fee affidavit—the Colorado court awarded up to $610/hour for one partner, $550 for another partner, and between $420 and $475/hour for an associate.[52] These rates are lower than Allen and Alcott's. Averaging the billing range across all of BHC's cited cases results in an hourly rate of $658.75 for partners and $499.20 for

---

[48] *Wilbur-Ellis Co, LLC v. Jens*, 2025 WL 1220437, at *2 (citing *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002)), aff'd, 2025 WL 2828598 (D.S.D. Oct. 6, 2025).
[49] *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 141 (8th Cir. 1982) (in the context of fee shifting under 42 U.S.C. § 1988); *see Finneman v. Laidlaw*, No. 21-CV-5025, 2023 WL 2663570, at *3 (D.S.D. Mar. 28, 2023) (allowing for southern California rates where the lawsuit necessitated retaining counsel from that State).
[50] *See* Dkt. No. 102, at 5.
[51] *Jim Black Constr., Inc. v. Derek Coleman*, No. 22-CV-30319 (Colo. Dist. Ct., Jefferson Cty. Mar. 11, 2024), vacated in part on other grounds, No. 24-CA-0080, 2025 WL 3295925 (Colo. App. Nov. 26, 2025); *see* Dkt. No. 105-3.
[52] Dkt. No. 105, at 66.

associates. Doing the same for Dobles's cases yields rates of $576/hour and $405.88/hour for partners and associates, respectively. Given Allen and Alcott's rank and experience, when judged against the marketplace ranges approved for similarly situated attorneys, the Court will set Allen's hourly rate at $650 and Alcott's at $450. These rates are in line with recent out-of-state fees awarded in the District of South Dakota, as BHC acknowledges.[53]

**C. Final Calculations**

The Court will use the lodestar method to determine fees.[54] The lodestar is calculated by "multiplying the number of hours reasonably expended by the reasonable hourly rate."[55] Once the baseline lodestar is calculated, the Court "may adjust this figure up or down by applying twelve factors known as the *Johnson* factors[.]"[56] "[T]he most critical factor is the degree of success obtained."[57] The Court "should exclude hours that were not reasonably expended" on the motion at issue.[58]

---

[53] *See* Dkt. No. 105, at 2-3 (citing *Esperance v. Vilsack*, No. 20-CV-5055, 2025 WL 10229, at *8-9 (D.S.D. Jan. 15, 2025) (approving $600/hour); *Black hills Clean Water All. v. U.S. Forest Serv.*, 733 F. Supp. 3d 801, 813-15 (D.S.D. 2024) (awarding $400/hour and $658/hour rates for Washington D.C. attorneys)).
[54] *Wilbur-Ellis*, 2025 WL 1220437, at *1 ("The court has discretion to decide which method of determining fees is appropriate").
[55] *NDN Collective v. Retsel Corporation*, No. 22-CV-0527, 2026 WL 1960837, at *14 (D.S.D. July 7, 2026).
[56] *Wilbur-Ellis*, 2025 WL 1220437, at *7.
[57] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).
[58] *NDN Collective*, No. 22-CV-05027, 2026 WL 1960837, at *9 (citing *Wheeler v. Mo. Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003); *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (per curiam)).

### 1. Large Cuts

In its affidavit, BHC supplied billing records for Allen and Alcott from March 11, 2026, to July 27, 2026[59] and records for Druley from January 12, 2026, to June 30, 2026.[60] As already discussed, all work billed before May 12, 2026, was not reasonably expended on the amended motion. What's more, BHC agreed to withdraw its January 12, 2026 fee request.[61]

Making these deductions, Allen's hours are reduced by 33.6 (from 39.3 to 5.7)—27.2 hours from March, 2.7 from April, and 3.7 from May. The Court also clips Alcott's hours by 22.1 (from 51.7 to 29.6)—11.3 hours from March, 2.5 from April, and 8.3 from May. Finally, the Court shaves off 6 of Druley's hours—1 hour from January, 3.1 from March, 1.6 from April, and 0.3 from May.

So, of the $58,066.70 BHC requests,[62] $37,418.60—(27.2 hours at $715) + (22.1 hours at $526) + (6 hours at $295) = $37,418.60—is to be deducted, making compensable hours, before hourly rates are adjusted, 5.7 for Allen, 29.6 for Alcott, and 4.4 for Druley. If their hourly rates were not adjusted, the request would be $20,648.10, much less than BHC's alternative request of $24,917.40.

---

[59] Dkt. No. 105-1.
[60] Dkt. No. 105-1; 105-2.
[61] Dkt. No. 109, at 8 n.2.
[62] Dkt. No. 109, at 10.

**2. Sanctions award after hourly adjustments.**

The Court finds that Denver rates support reducing the hourly rates BHC requests. Allen's fair market rate is $650 and Alcott's is $450. With these adjustments, the lodestar calculation comes to $18,323—(5.7 hours at $650) + (29.6 hours at $450) + (4.4 hours at $295) = $18,323.

With the lodestar calculation reached, the Court may adjust it up or down based on the twelve *Johnson* factors. These include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[63] Again, the "most critical factor is the degree of success obtained."[64]

Contrary to BHC's claim that its "opposition to the [m]otions was entirely successful, with the Court agreeing with BHC on every point raised[,]"[65] the Court only made merits determinations on Dobles's amended motion. Denying his initial motion as

---

[63] *See Wilbur-Ellis*, 2025 WL 1220437, at *1 (citing *Hensley*, 461 U.S. at 430 n.3, 434); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017)).
[64] *Hensley*, 461 U.S. at 436.
[65] Dkt. No. 109, at 5.

moot means that BHC did not prevail on everything he raised in both motions or that the Court condoned its last-minute disclosure of 593 documents. The Court thus does not see a need to adjust its calculations based on BHC's success in fending off the motions. Slashing the hours and rates is sufficient to ensure fairness.

After considering the other *Johnson* factors, the Court is similarly unpersuaded that any further adjustments are necessary. The time and labor required—39.7 hours—is consistent with like situations.[66] The issues raised, and the skill set needed, were not unique. No attorney has claimed employment preclusion or time limitations. The hourly rates have been tempered to match the Denver market and what the District of South Dakota has allowed for outside-the-state counsel. The experience, reputation, and ability of counsel do not demand that approved market rates be deviated from. Additionally, no claim is made that the case is an "undesirable" one. And the nature and length of the professional relationship between BHC and its counsel do not justify any additional modifications. Lastly, the Court has consistently referenced, and used as guidance, awards in similar cases.

Finding no reason to make any more adjustments to its computations, the Court awards BHC $18,323 in fees.

---

[66] *Wilbur-Ellis*, 2025 WL 1220437, at *5 (awarding 40.4 hours for motion to compel discovery and in preparing fee petition).

## CONCLUSION

Dobles argues that his amended motion was substantially justified because the Court granted *in camera* review and because his earlier motion led BHC to revise its privilege logs and turn over significant documents. Neither argument is convincing. *In camera* review is a prerogative of the Court; in exercising that right, the Court expressly disclaimed a need based on deficiencies in the privilege log. Dobles's assertion that BHC also engaged in discovery abuse prior to filing the amended motion does not justify his own gamesmanship. Anu such abuse would more appropriately be addressed in a separate motion for sanctions. Finally, awarding sanctions would not be unjust and is warranted under the circumstances.

Yet BHC unreasonably requested 91 hours of work based on one improper motion. Those hours spent responding to the first motion—rendered moot by BHC's eventual compliance—are not recoverable. The Court made no findings on the merits of that motion and only reviewed documents related to the amended motion. Awarding sanctions for conduct the Court never approved and for a motion it never passed on the merits of is inappropriate.

After reviewing the Colorado cases the parties cite, the Court finds that the hourly rates of BHC's out-of-state counsel do not comport with the Denver market or with prior awards for such counsel in this District. The Court accordingly reduces the hourly rate for the compensable hours.

## ORDER

For the reasons stated, and based on the authorities cited and the record now before the Court, it is

ORDERED that BHC's request for attorney fees is granted, but only in part. BHC is awarded $18,323.00 in fees.

## NOTICE

A party may seek reconsideration of both this order and the order denying Dobles's motion to compel[67] before a district judge upon a showing that they are "clearly erroneous or contrary to law."[68] The parties have 14 days after service of this order to file written objections unless an extension of time for good cause is obtained.[69] Failure to file timely objections will result in the waiver of a party's right to appeal questions of fact.[70] Objections must be specific to trigger review.[71]

DATED this 13th day of October 2026.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

[67] Dkt. No. 102.
[68] 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).
[69] *See* Fed. Rule Civ. P. 72(a).
[70] *Id.*
[71] *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986).